REDMANN, Judge
(dissenting).
In my opinion the curator has not shown any entitlement to the relief sought by its rule to obtain, from the attorney to whom the interdict had earlier entrusted it, possession of the physical document purport-to be an olographic will of the interdict.[1] The judgment appealed from should be set aside and either the rule dismissed or the matter remanded (to now permit trial of the allegation that the testatrix herself demanded return of the will prior to interdiction). ing
No Louisiana decision has been found controlling this case. I can find no expression directly on point by the civil law commentators readily available.
Decisions in other states are very few, but their views seem unanimously to support defendant in rule. 95 C.J.S. Wills § 306b reports:
“In the absence of statutory authorization, the guardian of an insane person may not, during his ward’s lifetime, compel the surrender of a will executed before or during insanity.
“In the absence of statutory authorization, the guardian of an insane person may not by petition .compel surrender to him of a will executed by the insane person before becoming insane. A guardian may not maintain an action during the lifetime of his ward to compel one in lawful possession of a purported will of his ward to surrender it for cancellation on the ground that it was executed while the ward was mentally incompetent, although the guardian may possibly have sufficient interest and right of possession to maintain a replevin suit to recover possession of such an instrument from one in unauthorized possession thereof.”
The Civil Code appears to me likewise to support defendant in rule’s position.
*58 Perhaps the most fundamental pertinent principle is that the curator does not represent the person of the interdict; the curator is not “the heir” of the interdict and therefore is not the “universal successor” of the interdict, “possessed of all of his property and rightssee C.C. art. 884. It is only the universal successor who “represents the person” of the party to whose property and rights he succeeds; see C.C. art. 3556(28).
The plaintiff in rule is only “curator of the property” of the interdict, C.C.P. arts. 4550 and 4069, and its authority derives from appointment under C.C.P. art. 4550 and C.C. art. 404. The latter provides:
“Within a month, to reckon from the date of the judgment of interdiction, if there has been no appeal from the same, or if there has been an appeal, then within a month from the confirmative sentence, it shall be the duty of the competent judge of the domicile or residence of the person interdicted to appoint a curator to his person and estate.” (Emphasis added; 1825 French text for estate was “biens.”)
C.C. art. 448 provides:
“The word estate in general is applicable to any thing of which riches or fortune may consist. This word is likewise relative to the word things, which is the second object of jurisprudence, the rules of which are applicable to persons, things and actions.”
A will may be a thing but in the ordinary meaning of the terms it is not a thing “of which riches or fortune may consist” and is thus not part of the interdict’s estate. While Yiannopoulos, Louisiana Practice: Civil Law of Property, § 9, opines that under art. 448 estate and things are synonymous, he concludes “consequently, a thing according to the Code is ‘any thing of which riches or fortune may consist.’ ” He then observes:
“The terminology of the Louisiana Civil Code, however, is neither accurate nor consistently used. Consistent terminology should distinguish between ‘estates’ and ‘things.’ The word ‘estate’ should apply to physical objects and rights having an economic value and the word ‘things’ to corporeal objects regardless of their pecuniary value and whether or not susceptible of appropriation. This would result in attributing a technical meaning to the word ‘estate’ while the word ‘things’ would be em-employed in accordance with non-legal everyday usage. * * * ”
I do not suggest that an interdict’s will is wholly beyond the curator’s power to obtain because not part of the interdict’s “estate.” But there are “things” which may be thought of as belonging to the interdict, such as his clothing, his marital status, and indeed his body, which it is not the function of the curator of his property to possess, preserve and administer. Accordingly the mere fact that an olographic will is a “thing” does not show entitlement in the curator of property sufficient to take it out of the hands of a person to whom the testator entrusted it.
By way of restatement, it may also be said that one’s will does not form part of his patrimony, being economically neither asset nor liability. See Yiannopoulos, op. cit., §§ 77-78. It is of course not subject to seizure by his creditors. It has value to the testator, but so does his very filiation, as of course does his anticipated inheritance from his parents. Even some rights of evident present economic value, such as a spouse's right to sue for separation of property, cannot be exercised by creditors, C.C. arts. 1991-1992; and presumably a curator of property (even though his rights *59 are different and greater) could not sue for separation of property.
Because a curator is not the universal successor of the interdict and because a will is not part of the estate, or patrimony, of the interdict, a demand for possession of the will surely does not fall within the curator’s principal function of administering property, C.C.P. art. 4262, although in some circumstances the right and the obligation to preserve the will may fall to the curator because it rests in no one else.
In respect to a person who has no authority to retain a will made prior to interdiction, e. g., a hotel-keeper who found it in a room the interdict had occupied, such a holder has no right to retain it and no contractual obligation to preserve it, and the curator’s right to obtain it ought to be upheld for purposes of preservation. But in such a case the curator would not be revoking an arrangement made by the interdict.
In respect to a person to whom the testator did entrust the care of the will, the curator ought not to be able to obtain it except on a showing of reasonable necessity for purposes of preservation, because the will is not property, is not part of the “estate” of the interdict. Moreover, the curator does not merely seek to obtain a “thing” of the interdict, but seeks rather to revoke an arrangement for its custody made by the interdict. The curator cannot be allowed to revoke on grounds of the testator’s insanity at the time of making and depositing the will, because this question will ultimately decide whether the will can be probated and executed.
Even where a non-income-producing thing of economic value has been left by the interdict (while he had his faculties) with a third person, if it is not the kind of property the curator as a prudent administrator ought to sell (as, e. g., a family genealogy the interdict had loaned indefinitely to a public library), it appears to me that the curator should not be able to elect to revoke the arrangement the interdict made except on a showing that the action is reasonably necessary to preserve the property (or, as to that kind of property, on grounds of insanity at the time the arrangement was made).
Generally, curatorship is “the same as” tutorship, C.C.P. art. 4554 (see also its source, former C.C. art. 415). Yet a 16-year old minor can make a will, C.C. art. 1477, and this authority would presumably include the right to name in the will his succession’s attorney and also to leave the will with the attorney for probate when the need arose. The interdict, during a lucid interval if interdicted for insanity, can also make a valid will, Succession of Schmidt, 219 La. 675, 53 So.2d 834 (1951), and presumably likewise instruct his attorney to retain the will. The tutor or curator in such a case ought to be denied the right to demand the will, which is so plainly no direct concern of tutor or curator. Otherwise an unscrupulous tutor or curator, displeased by the will, might destroy it and claim the minor or interdict destroyed it to revoke it. As a minimum C.C. art. 407 should be invoked to require an under-curator to participate in the hearing of such a demand by a curator, which of course implies absence of absolute right on the part of the curator.
If the leaving of the will with the instructions here recited is a deposit, C.C. art. 2951 does not oblige its delivery to the curator upon the testator’s interdiction; that article merely prohibits its delivery to anyone else (including the testator).
If the leaving of the will were mandate, C.C. art. 3027’s revocation of mandate upon death or interdiction would not necessarily apply. The naming of one’s succession’s attorney in a will is not, of course, revoked by the death of the testator; Rivet v. Battistella, 167 La. 766, 120 So. 289 *60 (1929). The testator’s depositing of the will with the named attorney (especially under the instructions here alleged) facilitates execution of the will’s mandate and thus, in my opinion, such mandate as may be involved in the attorney’s preserving the will ought also to be excepted from art. 3027’s rule of revocation on death or interdiction.
The decision to reclaim the will, to revoke the original decision on such a personal matter, certainly does not appear to be within the normal function of an administrator of the property of an interdict, and should be denied the curator unless it shows some reasonable need for such action for the advantage of the interdict.
The majority notes there is no threat to preservation of the will here in the hands of the attorney, but observes that in some future case, where the will-holder is not so responsible, such a threat might exist. Yet that reasoning is equally applicable to the curator. It may be a source of consolation that this curator, a bank, will not lose the will; but in some other case a layman curator, ill-equipped to preserve a will, might use this decision as authority to take the will away from an attorney who obviously could better insure its preservation.
The question is ultimately one of legal principle.
Is a Louisiana “curator of property” merely an administrator of the “estate” of the interdict, as I understand our law basically to provide, who ought therefore to show some reasonable necessity for revoking arrangements made by the interdict prior to interdiction in matters unrelated to the administration of the interdict’s estate?
Or does Louisiana, in a case of first impression, now adopt (in Planiol’s words, Civil Law Treatise, I, § 2097) “the old theory of the [curator’s] omnipotence which modern law is abandoning more and more” ?

. I note but, because it applies only to national banks, have not explored the reference by 10 Am.Jur.2d Banks § 362, n. 4, to a Washington case “holding that a national bank cannot enter into a contract to take a will into its custody and deliver it at the death of the testator, a breach of which will render it liable in damages.” Here plaintiff in rule is a national bank, but of course not every curator is. An annotation at 141 A.L.R. 1277, 1279, reports that the Washington case, Myers v. Exchange Nat. Bank, 96 Wash. 244, 164 P. 951, L.K.A.1918A, 67 (1917), reasoned such a contract was beyond the bank’s power under the (then) federal statutes, and the bank was therefore not liable, for failure to timely produce the will, “either ex contractu or ex delicto.”